UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:19-CR-046 JD |
| | ) | |
| JOSHUA RAY | ) | |

## **OPINION AND ORDER**

Defendant Joshua Ray is facing several charges for the unlawful possession of one or more machine guns and firearms in violation of 18 U.S.C. § 922 and 26 U.S.C. §§ 5822, 5861(d), and 5871. The Department of Homeland Security intercepted a packaging traveling in international mail, which contained forty suspected Glock auto switch conversion devices that the government claims are capable of transforming a semiautomatic Glock pistol into a machine gun. The government obtained a warrant to search Joshua Ray's home at 54340 Kerryhaven Drive, Elkhart, Indiana and, on May 22, 2019, the government completed the search and interviewed the defendant.

Mr. Ray now moves to suppress the evidence and information obtained from the May 22, 2019 search by federal agents at his home, first arguing that the affidavit provided in support of the search warrant contained false statements that were material to the application for the search warrant. As a result, Mr. Ray demands an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) to examine the sufficiency of the warrant. Mr. Ray also argues that the warrant obtained by Homeland Security was a "general warrant" that gave federal agents unfettered discretion to seize anything on the premises of his home. Finally, Mr. Ray argues that the agents carrying out the search warrant did not properly advise him of his *Miranda* rights and did not obtain a voluntary statement from him.

1

The Court addresses Mr. Ray's general warrant argument first. Mr. Ray argues that the warrant obtained by Homeland Security was a "general warrant" that authorized a search for all evidence of a crime and gave the searching agents too much discretion to search and seize items in his home without limit. While the Court agrees that the Fourth Amendment prohibits general search warrants and requires that a warrant describe, with particularity, the place to be searched and the persons or things to be seized, the search warrant in this case meets that standard. A reasonably specific warrant does not have to be elaborately detailed or enable authorities to minutely identify every item they are searching for. *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir. 1984) (citations omitted). "The particularity requirement of the Fourth Amendment is to be applied with a practical measure of flexibility and only requires reasonable specificity." *United States v. Shoffner*, 826 F.2d 619, 631 (7th Cir. 1987).

The search warrant issued in Mr. Ray's case limited the search by agents to the items listed on Attachment B and any evidence relating to machine guns and firearms under 18 U.S.C. § 922(o) and 26 U.S.C. §§ 5861(d), 5861(e), and 5861(j). Attachment B states that "[a]ll evidence, instrumentalities, and records relating" to those statutes could be seized and provided a non-exhaustive list of items including memorandums, records, correspondence associated with the violation, digital records including text messages, any firearms found, and computers used to commit the violations. [DE 22-1]. While the search warrant provided numerous categories of items that the agents were approved to search, "[e]ach category named in the warrant had a direct relationship to the suspected crime." *Russell v. Harms*, 397 F.3d 458, 464 (7th Cir. 2005). And where "detailed particularity is impossible, generic language is permissible if it particularizes the *types* of items to be seized." *United States v. Hall*, 142 F.3d 988, 996 (7th Cir. 1998) (citation omitted) (emphasis added).

Violations under 18 U.S.C. § 922(o) and 26 U.S.C. §§ 5861(d), 5861(e), and 5861(j) include not only the possession of machine guns and firearms, but also the transfer, delivery, and receipt of such items. The warrant authorized only the seizure of items related to these kinds of violations, which could come in several different forms including but not limited to receipts of sale or purchase, messaging on electronic mediums, computer programs and software, money resulting from sales or transfers, and other records relating to the purchase and transfer of machine guns and firearms. Notably, "[a] search warrant does not have to specify the precise documents sought (often an impossible task) in order to satisfy the Fourth Amendment." *United States v. Vanichromanee*, 742 F.2d 340, 347 (7th Cir. 1984). The items listed in Attachment B of the search warrant were related to the unlawful transfer, delivery, receipt, and possession of machine guns and firearms, therefore the warrant that was issued to enable a search of Mr. Ray's home was sufficiently specific to meet Fourth Amendment requirements.

Next, Mr. Ray argues that the most critical portion of the affidavit in support of the application for the search warrant consisted of false statements made by Homeland Security Agent Howard regarding whether there were any legal uses of the switches delivered to his home. [DE 22 at 2]. More specifically, in paragraph 17 of his affidavit, Agent Howard states: "there is no legitimate use for an auto sear device unless one has a firearm to attach to it. The device is designed solely to convert a firearm into a machine gun." [DE 22-1]. Mr. Ray argues that the switches can also be attached to "Airsoft" pellet guns and that Agent Howard knew this as evidenced by his repeated questioning of Mr. Ray on whether the parts could be used for *both* Airsoft guns and Glock firearms. [DE 22 at 5]. The government argues that it was Mr. Ray and not Agent Howard who first brought up the lawful use of the parts in Airsoft guns thereby demonstrating that Howard did not know that the parts had any other legal use. [DE 49 at 10].

The Court notes that the first mention of "airsoft" in the audio transcription of Mr. Ray's interview is on page six of Interview Number One where Agent Howard is repeating what was discussed while the audio recorder had been inadvertently turned off. [DE 49-1].

As explained by the Seventh Circuit in *United States v. Swanson*, to obtain a *Franks* hearing, the Defendant has to "establish by a substantial preliminary showing that: (1) the affidavit contained a false material statement; (2) the affiant made the false statement intentionally, or with reckless disregard to the truth; and (3) the false statement is necessary to support the finding of probable cause." 210 F.3d 788, 789-90 (7th Cir. 2000) (internal quotations omitted). Here, the government contends that Agent Howard was merely repeating Mr. Ray's statements about the switches being used for another legal purpose, but this is a disputed issue of fact that requires a hearing. The Court finds that the defendant has alleged enough to warrant a hearing on this issue.

Finally, Mr. Ray moves to suppress statements he made to officers in an interview during the search. He argues that he was in custody at the time of his statements but that the officers failed to properly advise him of his *Miranda* rights and obtain a valid waiver.[1] Mr. Ray states that he was isolated in a bedroom with two agents, they controlled his movements, and would not allow him to attend to his young child. [DE 22 at 19]. The government states that Mr. Ray was willing to speak with the agents while the search was being conducted. [DE 49 at 20]. Mr. Ray

---

[1] Mr. Ray also suggests in passing that his statement should be suppressed because it was the product of his illegal detention in violation of the Fourth Amendment, yet he never offers any argument for why his detention (if he was in fact detained) would have been unlawful. [DE 22 at 20]. Officers have the authority to detain any occupants of a premises that is the subject of a search warrant. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Mr. Ray was present at his home when the agents executed the search, so even if he was detained, the detention would have been lawful. Mr. Ray offers no argument to the contrary, and in fact admits that the interview took place "during that search." [DE 22 p. 1].

alleges that while the agents' audio recorder was not actively recording, the agents told him that they had two forms for him to sign regarding consent to search the packages they seized but they did not tell him he was signing a *Miranda* rights waiver form. [DE 22 at 20]. Mr. Ray also alleges that he is of limited education and had learning disabilities in school including ADHD which resulted in his inability to understand what was read to him. [DE 22 at 21]. In response, the government states that after the agents determined Mr. Ray's education level, they read the *Miranda* form aloud to Mr. Ray and told him to stop them if he had any questions. [DE 49 at 20]. The government noted that Mr. Ray appeared "to be following along as [Agent] Howard read him the form, had no questions, and agreed to waive his rights and signed the form." [DE 22 at 24].

*Miranda* warnings are required if a defendant is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). Moreover, the waiver of a defendant's *Miranda* rights must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Although the transcript of the agents' conversation with Mr. Ray indicates that they reviewed Mr. Ray's *Miranda* rights with him, that original exchange was not included in the audio recording made by the agents. The facts also indicate that the day the search warrant was executed, approximately twenty armed officers and agents completed the initial sweep of Mr. Ray's residence before he alone was accompanied to a bedroom by two federal agents to talk. [DE 49 at 19]. Thus, Mr. Ray has alleged enough facts to warrant a hearing on 1) whether Mr. Ray was in custody and subject to custodial interrogation by the agents and 2) whether Mr. Ray validly waived his *Miranda* rights.

Accordingly, the Court now sets this matter for an evidentiary hearing at 1:00 p.m. on December 4, 2019. A witness/exhibit list should be sent to the Chambers email box one week

before the hearing. At the hearing, the parties are to submit any evidence on the following questions:

1. whether the warrant application contained a materially false statement, made by law enforcement with deliberate or reckless disregard for the truth, and that the false statement was necessary for the finding of probable cause under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978),

2. whether Mr. Ray was in custody and subject to custodial interrogation by the agents under *Miranda*, and

3. whether Mr. Ray validly waived his *Miranda* rights.

SO ORDERED.

ENTERED: November 14, 2019

                                          /s/ JON E. DEGUILIO
                                  Judge
                                  United States District Court