UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cr-00046-JD |
| | ) | |
| JOSHUA RAY | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America by Gary T. Bell, Acting United States Attorney for the Northern District of Indiana, by Kimberly L. Schultz, Assistant United States Attorney, and files the government's Sentencing Memorandum. As discussed below, the government respectfully suggests that an appropriate sentence would be a term of imprisonment of 66 months.

**I.     Remaining Guideline Calculation Issues**

This case does not appear to present an issue regarding the correct guideline calculation. While the Defendant has expressed a number of objections to the final Presentence Report [D.E. 131], none of the objections ultimately affect the guideline calculated by the Probation Department. The PSR calculates a guideline range of 63 to 78 months based on an offense level of 26 and a criminal history category of I. The government recommends a sentence of 66 months.

## II. Discussion

Because the Court must address and balance the factors identified by Congress in Title 18, United States Code, Section 3553(a), the government offers the following observations as to some of those factors and the guideline application in this case.

### A. Nature and Circumstances of the Offense

On or around May 7, 2019, Homeland Security (HSI) intercepted a package traveling from China addressed to Josh Ray at Kerryhaven Drive in Elkhart that contained 40 suspected Glock auto switches. An auto switch (sear) is a conversion device intended for use in converting a Glock semi-automatic pistol into a fully automatic weapon. As a result of the package seizure, HSI began investigating other shipments to Josh Ray and learned that numerous packages had been delivered to his address that contained a "butt stock", "switch", "tools", and other deliveries from China. Investigators believed that the description of tools and switch were references to prior auto switch shipments.

Agents obtained a search warrant for Mr. Ray's home, which was executed on May 22, 2019. Mr. Ray was home at the time the warrant was executed along with his child, grandfather, and mother. During the search of the residence, investigators located four auto switches, an iPhone belonging to Mr. Ray, evidence of domain, multiple rounds of ammunition from various

locations in the home, an HK 91 rifle, a Winchester rifle, two Ruger pistols, a Savage rifle, a Mossberg shotgun, and Smith and Wesson handgun. Investigators located evidence of drug use inside as well.

    Mr. Ray agreed to speak to Special Agent Howard. During his conversation, Ray told SA Howard that he had received over 100 switches over the last six months. Mr. Ray said he would purchase a switch online for about $14.00 from wish.com. Mr. Ray told investigators he had ordered additional switches the same day that the warrant was executed at his residence. He said that he had sold some of the switches to a person he was able to identify by name and had charged $50.00 per switch. Mr. Ray also admitted he had purchased firearms from this same person in the past and traded Glock switches for a firearm before. Mr. Ray said he had attempted to sell switches to other individuals in the past. He said he had previously owned a Glock 17 and 19; he said he had recently purchased an HK 91 rifle. Ray told SA Howard that he shot himself in the hand cleaning one of his Glock pistols about 8 months ago. Ray admitted that he has not only purchased switches, but that he had attempted to manufacture them himself. Mr. Ray admitted that he is an unlawful user of controlled substances.

    Mr. Ray's grandfather, Donald Ray, and mother, Shelly Ray, also spoke to the investigators. Of note, Mr. Ray's mother told investigators that she

was aware he was ordering switches off of wish.com. She did not know if they were legal to possess.

Investigators searched Mr. Ray's cell phone pursuant to a search warrant and found evidence that he had indeed successfully converted firearms from semi-automatic pistols to fully automatic machineguns. There is additional video of Mr. Ray using a Dremel style rotating sander on an auto sear while seated at a table. (Exhibit 1A, 1B). Video was recovered of Mr. Ray and his cousin, Chase, shooting a fully automatic pistol outdoors. (Exhibit 1C, 1D, 1E). Evidence from Mr. Ray's phone supported his earlier confession that he was an illegal user of controlled substances; the phone data suggested this usage dated back to at least 2018. Police found additional information related to firearms and switches on the following dates. On July 7, 2018, there was a photograph of a Glock 17 pistol with two extended magazines; July 19, 2018 photographs of an NFA weapon, that being a tan Glock pistol with hand grip and stock attached converting the firearm to a short barreled rifle; numerous photographs of AR-15 firearms in the phone; February 21, 2019 Facebook messenger chats illustrating that Mr. Ray was dealing auto-switches; evidence that Mr. Ray was attempting to sell a Glock pistol and Colt 1911 pistol; photographs of the HK rifle recovered from the search warrant along with evidence that the defendant had been attempting to sell the gun online. Additionally, investigators reviewed Mr. Ray's internet

search history. He had previously researched blueprints on how to manufacture an auto switch, shopping websites for auto switches, how to make Glock pistols fully automatic with paperclips, among other related searches.

Agents later interviewed Mr. Ray's cousin, Chase Hawkins, who told them that Mr. Ray previously showed him two Ruger pistols. He also recalled a time that Mr. Ray was making arrangements to purchase a Glock firearm from another person. He admitted that he was with Mr. Ray and once fired a fully automatic Glock firearm that Mr. Ray had in his possession.

On December 4, 2019, a suppression hearing was held in this matter and Mr. Ray decided to testify. He told the Court that he believed the auto switches he was purchasing online would work on airsoft guns (BB guns). He said that he had personally converted an airsoft pistol into a fully automatic airsoft pistol using Glock switches. He also said he told police that he had airsoft pistols at a separate residence. Specifically, Mr. Ray said, "I remember they asked me where my airsofts were, and I told them they weren't at—they were at my other house." He said he told them about the airsoft pistols at a different residence and clarified with, "I said, 'I don't know if they're at this residence or my other residence.' " Investigators have denied that Mr. Ray had ever told them that he had airsoft pistols at a separate residence.

### B. Defendant's PSR objections do not impact the applicable guidelines

The Defendant objects to the inclusion of sixteen auto-switches in calculating the number of firearms used to support an enhancement for possessing more than 100 firearms. U.S.S.G. § 2K2.1(b)(1)(D). Mr. Ray admitted to agents on the day the warrant was executed that he had purchased more switches but they had not arrived yet in the mail. Mr. Ray's previous attorney turned the illegal switches over to the ATF when they arrived in the mail. Whether or not the sixteen switches are included in the calculation is totally immaterial to the guidelines in this case. Mr. Ray admitted he bought a hundred of these items over six months. In addition, police found four auto-switches in the residence at the time of the warrant execution. An additional forty were intercepted on route to their destination to Mr. Ray. Seven firearms were recovered from the home. The sixteen additional switches in no way alter the applicable guideline calculation, as observed in the Probation Department's response to this objection. [D.E. 131, p. 2].

The Government is not requesting that the Court penalize Mr. Ray for cooperating with law enforcement by turning over the illegal sears. Instead, it is to his credit that he was honest with the police about the fact he had

6

more illegal machineguns coming to his house and ultimately ensured that the switches were turned over to law enforcement. The Government is required to disclose all the facts surrounding this offense and all relevant conduct; therefore, the additional sixteen switches must be referenced in the recitation of the material facts.

The Defendant further objects to the description in the PSR of the cargo shipment history from China to Mr. Ray's residence. This cargo shipment history is material to the case because it supports the Defendant's own confession that he indeed ordered and received 100 auto switches in the mail. The shipments history does not erroneously suggest he was more involved in the purchase of auto switches than he actually is. The history simply explains what law enforcement believed and corroborates the Defendant's own confession. To the extent that this objection somehow pertains to the 3552(a) factors, the Government is asking this Court to hold him responsible for 100-199 firearms and is not seeking any additional enhancement or aggravation for any other packages the Defendant received from China.

### C. History and Characteristics of the Defendant

Based on the PSR, Mr. Ray does not have any criminal history points despite his past contacts with the criminal justice system. The PSR correctly includes his complete juvenile and adult history, including expunged cases. U.S.S.G. §§ 4A1.2(i), 4A1.3. Despite having a close relationship with his

7

mother and grandfather, the Defendant had a troubled childhood and became a ward of the Indiana Department of Corrections as a juvenile. [D.E. 130, ¶ 40, 58].

As an adult, Mr. Ray was given the opportunity to participate in a pretrial diversion program through Elkhart County for a driving offense. *Id.* ¶¶ 43, 44. He chose not to avail himself of the opportunity and instead failed to appear in court. He was later arrested on a warrant. In 2014, the Defendant was involved in an incident between his mother and girlfriend that resulted in him handcuffing his mother until police arrived. *Id.* at ¶ 46. He was ultimately convicted of disorderly conduct.

The Defendant has a documented history of drug use and mental health issues. He received treatment for drug use through Oaklawn in Elkhart, Indiana but did not complete the recommended follow-up. *Id.* at ¶ 67. The Defendant scored a zero on the drug screen administered by Probation showing that further substance use evaluations are not presently warranted. *Id.* at ¶ 68. The Defendant did test positive for THC during the pendency of this case. He was prohibited from possessing firearms at the time of his offense because he was an illegal user of controlled substances.

The Defendant has three children and has been ordered to pay child support for his oldest child. Nevertheless, he has never held verifiable employment. His cellular phone records suggest that at the time of the

8

offense conduct, he was earning money selling miscellaneous items such as firearms, animals, cars, and sometimes even marijuana. He currently runs a business selling toys out of someone's house.

The government submits that based on Mr. Ray's personal characteristics, a sentence within the guidelines is reasonable.

### D. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence to Criminal Conduct

With regard to the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct, a period of incarceration within the guidelines is appropriate. Mr. Ray bought, imported, and sold over 100 machineguns. He is responsible for the distribution of more than 100 dangerous, concealable, unregistered firearm parts to individuals who cannot be traced by the ATF. Most of the parts he ordered were never recovered by law enforcement. Mr. Ray had no way of knowing how these devices would be used by their recipients or how they would be further distributed after he initially sold them. Mr. Ray also profited from his sale of machineguns.

### III. Conclusion

The government recommends that the Court impose a sentence of 66 months, followed by a suitable period of supervised release.

Dated: December 31, 2020

                        Respectfully submitted,

                        GARY T. BELL
                        ACTING UNITED STATES ATTORNEY

By:   *s/ Kimberly L. Schultz*
       Kimberly L. Schultz
       Assistant United States Attorney
       United States Attorney's Office
       204 S. Main Street, Room M01
       South Bend, IN 46601
       (574) 236-8287
       Email: kimberly.schultz@usdoj.gov