UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:19-CR-46 JD |
| JOSHUA RAY | |

**OPINION AND ORDER**

Now before the Court is Joshua Ray's motion for compassionate release. In his motion, Ray argues that there are three reasons his situation is extraordinary and compelling: (1) because his girlfriend's incarceration has resulted in his children entering the foster care system; (2) because his disabled mother is without care due to his grandfather passing away; and (3) because of the risk presented by COVID-19. For the reasons explained below, the Court denies this motion.

A.      **Factual Background**

Joshua Ray is imprisoned at FCI Fort Dix. He is serving a 41-month sentence imposed by this Court after he was convicted of possessing one or more machine guns in violation of 18 U.S.C. § 922(o). Ray's conviction was based on his possession of illegal auto-switches, which convert a firearm into a machinegun by making it fully automatic. (DE 115 at 3–4.) His projected release date for this offense is February 22, 2024.[1]

On January 4, 2023, Ray moved for compassionate release under 18 U.S.C. 3582(c)(1)(A). In this motion, Ray explains that the mother of his children was arrested "on the

---

[1] *See Inmate Search*, Federal Bureau of Prison, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited May 11, 2023).

grounds of [f]elony neglect of a dependent child." (DE 155 at 1.) Ray recounts how his "children [were] found outside naked during winter months alone, a quarter mile away from home, dirty, cold and injured while [the] mother was home sleeping multiple times." (*Id.*) Because of this neglect, "two of [his] three children [were] placed in foster care." (*Id.*) Ray attaches as an exhibit an order on protective custody from the Elkhart Circuit Court which is consistent with Ray's description of the condition his children were found in. (DE 155-1 at 4.) While it is somewhat unclear whether the order pertained to both children or only one child, the Elkhart Circuit Court found that, due to the above conditions and the incarceration of both parents, "responsibility for the placement and care of the child is ordered to the DCS." (DE 155-1 at 4.) Ray asserts that these circumstances "are a major strain on [his] mental health" and that "due to [his] incarceration [his] children have not had the proper care." (DE 155 at 2.)

In his motion, Ray also argues compassionate release is warranted for two other reasons. First, he explains that his disabled mother is "without a caretaker due to [his] grandfather's passing on 12-22-21." (DE 155 at 2.) According to Ray, she "has no significant other to help." (*Id.*) Second, Ray asserts that he is "at a heightened risk for death due to (Covid 19) [based on his] current health status and the fact that it is physically impossible to social[ly] distance in the Fort Dix New Jersey Prison . . . ." (*Id.* at 155.)

The Government then responded to Ray's motion. (DE 159.) Ray failed to file a reply. Therefore, the motion is ripe to review.

B.      **Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant

2

such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). This analysis proceeds in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (*cert*. denied 142 S. Ct. 1363 (2022)). At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers the applicable § 3553(a) factors as part of determining what reduction to award the defendant. *Id.*

The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present. Those include when the defendant is suffering from a terminal illness or is suffering from a serious physical or medical condition that substantially diminishes his ability to provide self-care within the prison. U.S.S.G. § 1B1.13 n.1(A). *See United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (finding the substantive aspects of U.S.S.G. § 1B1.13 and its Application Notes provide a "working definition" of "extraordinary and compelling reasons" that can guide a court's discretion "without being conclusive"). Family circumstances, such as "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," may also constitute extraordinary and compelling reasons. U.S.S.G. § 1B1.13 n.1(C)(i). The finding of extraordinary and compelling reasons is conditioned upon the defendant not being "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

A defendant moving for release from prison bears the burden of establishing extraordinary and compelling reasons. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir.

2021) ("Although it has appeared only in nonprecedential opinions until now, we have also said that the movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction.").

**C.   Discussion**

As an initial matter, the Court considers whether Ray exhausted his administrative remedies. Prior to adjudicating a motion directly from a defendant under § 3582(c)(1)(A), a defendant "must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait '30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). The Court finds that Ray exhausted his administrative remedies by waiting thirty days from the warden's receipt of his request. Ray demonstrated this by attaching his request to the warden for compassionate release as an exhibit. This request is dated November 22, 2022, more than 30 days before him filing the instant motion on January 4, 2023. (DE 155-1.) In his filing, Ray also stated that he "exhausted all remed[ies] with the warden[.]" (DE 155 at 4.) While the Government argues that Ray did not "allege that the warden failed to respond" to this compassionate release request or allege how the compassionate release request was resolved, the Government provides no evidence to contradict Ray's assertion that he exhausted his remedies or that he submitted his request for compassionate relief to the warden. If the warden did respond, then the Government could have included that as an exhibit. Because the Government did not, and because Ray is pro se and has attached evidence supporting that he submitted a request for compassionate release to the warden, the Court finds that the exhaustion requirement has been satisfied.

The Court next considers whether Ray has shown an extraordinary and compelling reason for his release. Ray first argues that his girlfriend being incarcerated and his children being placed in the foster care system is an extraordinary and compelling reason justifying his release. The Sentencing Guidelines do indicate that the "incapacitation of the caregiver of the defendant's minor child or minor children," may constitute an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13 n.1(C)(i). The Government argues that incapacitation based on incarceration may *never* justify compassionate release because incapacitation is limited to only where the caregiver has passed away or suffered an illness resulting in incapacitation. (DE 159 at 13.) The Court disagrees. The Guidelines focus on whether the caretaker of the defendant's minor child is "incapacitated," not the reason for this incapacitation. If the incapacitation is legal in nature, such as the caretaker's incarceration, this may, depending on the circumstance, constitute the type of extraordinary and compelling situation warranting compassionate release. Other courts have held exactly that. *See United States v. Fields*, 569 F. Supp. 3d 231, 240 (E.D. Pa. 2021) (granting compassionate release where the defendant's children had been taken away from the mother for neglect where the defendant sought "compassionate release to participate" in removal proceedings which "could prove critical to the custody determinations").[2]

In determining whether Ray's children being placed in foster care constitutes an extraordinary and compelling reason for his release, the Court looks to whether the Defendant would be "legally entitled to custody of the children" if released and whether the Defendant

---

[2] The Court notes that, unlike *Fields*, Ray has not argued that he needs to be released to participate in removal proceedings that may affect custody determinations. In fact, its unclear based on the evidence before the Court whether these proceedings have already occurred. Because Ray does not raise it as an argument, the Court does not address whether the need to participate in proceedings that may affect parental rights can constitute an extraordinary and compelling reason for release.

would be a suitable caregiver to that child. *See United States v. Johnson*, No. 1:15-CR-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (finding that extraordinary and compelling reasons did not exist because it was unclear based on the record before the court whether the defendant would be found "a 'suitable caretaker' for his child by the governing authorities'"); *United States v. Dawkins*, No. CR 08-412, 2021 WL 1946662, at *3 (W.D. Pa. May 14, 2021) (denying motion for compassionate where the defendant's child had been placed in foster care because the defendant "[f]ailed to support his motion with evidence that he [was] a suitable caregiver for his minor child" and because it was "unclear what, if any, custodial or parental rights Defendant has retained over the minor at issue").

Courts look at suitability and legal entitlement because, if the defendant would not gain custody of the child after release, then it cannot be said that the child's placement in foster care provides a compelling reason for that defendant's release. For example, in *United States v. Paul*, the defendant filed a motion arguing that he was entitled to compassionate release because "he [was] the only available caretaker for his children, who are currently in foster care." No. 3:18-CR-00227, 2020 WL 5807343, at *1 (S.D.W. Va. Sept. 25, 2020). The court explained that the incapacitation of a child's caretaker, and that child being taken into foster care, did not on its own demonstrate an "extraordinary and compelling" reason for release. Instead, the court reasoned that because the defendant failed to provide "evidence that he retains parental or custodial rights" and because there was a question over whether the defendant would even have a "residence for the children to live in," that the defendant has not established extraordinary and compelling reasons for release. In other words, the court reasoned that a parent's release cannot be compelling if such release would have no actual effect on the child's placement.

Like the defendant in *Paul*, Ray has presented no evidence that he would have custodial rights over his two children once released. Ray attaches as an exhibit a document entitled "Order on Protective Custody Hearing," which was issued by the Elkhart Circuit Court Juvenile Division. (DE 155-1 at 3.) This order indicates that the hearing was held after a "CHINS Petition ha[d] been filed." (DE 155-1 at 3.) A CHINS adjudication determines whether a particular "child is in need of services" and focuses on whether there is a "condition that creates the need for court intervention." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The order that Ray attaches is a protective order from a custody hearing held on November 7, 2022. The judge in this hearing determined that there was "probable cause to believe the child is a child in need of services" and found that DCS was responsible for the child's care. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011) ("In the context of removing a child from his home and family, a seizure is reasonable if it is pursuant to a court order, if it is supported by probable cause, or if it is justified by exigent circumstances . . ."). The Court also set an "Initial Hearing on the [CHINS Petition] for November 17, 2022." (DE 155-1 at 3.) At the initial hearing, the court would have informed the child and any custodians present of the "nature of the allegations in the petition" and the "dispositional alternatives available to the court if the child is adjudicated a child in need of services." Ind. Code § 31-34-10-4.

That said, this Court has not been given any information about what happened after the protective custody hearing on November 7, 2022. Meaning, this Court doesn't know where Ray's parental rights currently stand. Critically, Ray does not provide the Court with any information regarding whether proceedings regarding termination of his parental rights were ever instituted. While "termination of parental rights 'is not an inevitable result' of a CHINS proceeding, '[t]here is no question that . . . many petitions to terminate the parent-child

7

relationship grow out of a CHINS action.'" *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (quoting *State ex rel. Gosnell v. Cass. Cir. Ct.*, 577 N.E. 2d 957, 958 (Ind. 1991)). And while the protective custody order predominantly focuses on the incident where Ray's child was wandering alone outside, naked, cold, and injured, because the child's mother was asleep, Child Protective Services conducted two investigations into incidents involving Ray's children prior to his incarceration. According to Ray's Presentence Investigation Report ("PSR"), there was one incident where "his daughter burned her leg from riding on a motorcycle" and a second incident where "his son fell off the bed and broke his leg." (DE 130 ¶ 60.) Given that there were prior investigations by CPS when Ray was their caretaker, it is conceivable that proceedings regarding termination of parental rights were initiated against both the children's mother and Ray. Without addressing whether a termination of his parental rights has occurred, Ray cannot show that he "would actually be awarded custody" of his children upon release. *Johnson*, 2020 WL 6075867, at *5 (denying compassionate release where it was "unclear whether defendant has any custodial rights with respect to his child or whether, if released, those rights would be recognized and he would actually be awarded custody of his son").

Not only does this Court lack information on Ray's parental and custodial rights, but the Court also has not been provided information regarding whether Ray would have a suitable residence to take care of his children once released or the ability to take care of his children. In his PSR, Ray told probation that prior to his incarceration he "live[d] with his girlfriend and his three children at . . . [a] home owned by [his girlfriend's] mother." (DE 130 at 12.) Probation confirmed that this residence was suitable for supervised release. Yet in one of his exhibits, Ray states that he plans to have his kids stay with him at a different address. (DE 155-1 at 5.) The Court has no other information about the residence at this address or whether it is suitable to

8

house children. Furthermore, while Ray states that he has a "job already in place" at a business entitled "The Gettin Place," he has not provided the Court with any documentary evidence or declarations corroborating this representation. *See Johnson*, 2020 WL 6075867, at *5 (finding that there was not an extraordinary and compelling reason for defendant's release where he failed to provide evidence to corroborate the job he claimed, where he would live upon release, and his custodial rights with respect to the child).

Ray "bears the burden of establishing extraordinary and compelling circumstances." *United States v. Barbee*, 25 F.4th 531, 532 (7th Cir. 2022). But as discussed above, no information has been provided to the Court regarding (1) whether Ray's parental and custodial rights have been terminated and (2) whether Ray could provide a suitable living situation for his children upon release. Without demonstrating that Ray has parental rights, and that he would be a suitable caretaker, the Court cannot find that his children's placement in foster care is a compelling reason for his release. *See United States v. Hackler*, No. 3:12-CR-201-O-1, 2023 WL 360244, at *3 (N.D. Tex. Jan. 23, 2023) (denying compassionate release where defendant failed to show "he would be a suitable caretaker" and failed to "provide evidence showing that he has custodial rights in relation to his child"); *United States v. Corbin*, No. CR 11-206, 2022 WL 1291470, at *4 (W.D. Pa. Apr. 29, 2022) (denying compassionate release where the defendant "failed to support his motion with evidence that he is a suitable caregiver for his minor child" and where it was unclear "what, if any, custodial or parental rights Defendant has retained over the minor").

The Court emphasizes that this finding is, in no way, a judgment on whether Ray is, in fact, suitable as a parental guardian. It is simply because Ray, as the one moving for compassionate release, bears the burden of proving that the situation presents an extraordinary

and compelling reason for his release. Without presenting evidence that his release would have an actual effect on his child's current placement in foster care, Ray cannot say that his child's placement in foster care presents an extraordinary and compelling reason for his release.

Next, Ray argues that his mother being "100% disabled and without a caretaker due to [his] grandfather's passing" provides an extraordinary and compelling reason for his release. (DE 155 at 2.) Again, the Court sympathizes with Ray's desire to care for his disabled mother. But it is his burden to prove that his mother is disabled and that this disability constitutes an extraordinary and compelling reason for his release. Ray presents no evidence, such as medical records or a declaration from his mother, that she is disabled and has nobody other than Ray to provide her with care. Because there is no evidence submitted in support of Ray's claim that his mother is "100% disabled," and because he fails to identify the disability, the Court finds that Ray has not met his burden. *See United States v. White*, No. 198CR00038JMSMJD03, 2022 WL 17960721, at *5 (S.D. Ind. Dec. 27, 2022) (denying motion for compassionate release in part because "there is no evidence that his mother is incapacitated and unable to care for herself").

Lastly, Ray argues that he is at a "heightened risk for death due to (COVID-19), Long Covid, and also omicron" because there is not enough room to socially distance at FCI Fort Dix. (DE 155 at 2.) Ray also states that he should get a reduction because his time served during the pandemic has made his incarceration "more punitive than normal." (*Id.*) The Court finds that COVID-19 does not present an extraordinary and compelling reason for Ray's release. While Ray is worried about COVID-19 and believes that this made his prison experience more "punitive," "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing

Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."[3] *United States v. Allegra*, No. 15 CR 243, DE 232 at 7 (N.D. Ill. Apr. 13, 2020).

Furthermore, the Government submitted records showing that Ray received two doses of the COVID-19 vaccine in 2021, (DE 161 at 4 ), and BOP records indicate that the facility he is housed in, FCI Fort Dix, has no current inmates testing positive with COVID-19, and no staff members.[4] An overwhelming number of district courts across the country have held that being fully vaccinated drastically reduces the risk of becoming severely ill and therefore denied compassionate release. *See, e.g.*, *United States v. Pennington*, 2021 WL 1976803, at *2 (N.D. Ind. May 18, 2021) ("By far the biggest reason compassionate release is not appropriate in this case is that [the defendant] is vaccinated."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) (citing more than a dozen cases); *United States v. Singh*, 2021 WL 928740, at *3 (M.D. Penn. March 11, 2021) ("as a result of his vaccination, [the defendant] now has significant protection against serious illness or death should he contract COVID-19 and, accordingly, the Court concludes that [the defendant] has not demonstrated that his underlying conditions—in combination with the possibility of a COVID-19 infection—provide extraordinary and compelling reasons to grant his motion for compassionate release"). The Seventh Circuit has also weighed in on this issue. In *United States v. Broadfield*, 5 F.4th 801,

---

[3] The Court notes that Ray recently filed a letter indicating that it was his "impression" that inmates were "[r]eceiving a year off of their sentence for the extra punitive time being incarcerated during the pandemic" and also stating that he was in "need of a court appointed attorney." (DE 163.) But punitive conditions stemming from COVID-19 applicable to all prisoners do not warrant compassionate release. Rather, "[i]n the context of the COVID-19 pandemic, § 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the . . . particular circumstances of where he is housed and his personal health conditions." *United States v. Thomas*, No. 1:11-CR-22, 2020 WL 5640745, at *3, 2020 U.S. Dist. LEXIS 172963, at *7 (N.D. Ind. Sept. 22, 2020) (internal quote marks omitted). The Court also exercises its discretion and does not appoint counsel. *See United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("How a district judge elects to consider a § 3582(c) motion to reduce a sentence is largely a matter of discretion. The judge can appoint counsel for a movant, but need not do so.").

[4] See BOP Covid-19 Statistics, Federal Bureau of Prison, https://www.bop.gov/coronavirus/covid19_statistics.html (last updated May 11, 2023).

11

803 (7th Cir. 2021), the court held that prisoners who have been vaccinated or who have been offered but declined a vaccine may not rely on the risk of contracting COVID-19 as an "extraordinary and compelling reason" justifying release. The Seventh Circuit has recognized an exception to this if the prisoner can show that he would "not benefit from the COVID-19 vaccine" due to his conditions, *United States v. Santana-Cabrera*, No. 22-2056, 2023 WL 2674363, at *1 (7th Cir. Mar. 29, 2023), but Ray does not argue this. *See also United States v. Winn*, No. 22-2452, 2023 WL 2064156, at *1 (7th Cir. Feb. 17, 2023) (denying motion for compassionate release because "he provided no evidence that [his] conditions prevented vaccines from effectively protecting him from the virus").

Given all these circumstances, the Court cannot find that extraordinary and compelling reasons warrant compassionate release or a sentence reduction for Ray.

Even if the above qualified as extraordinary and compelling reasons for relief, the Court would still deny Ray's motion based on its consideration of the § 3553(a) factors. Ray explains that, while on pretrial release, he "completed drug and mental health classes with no court order[.]" (DE 155 at 43.) Ray also explains that he has completed all classes offered to him at FCI Fort Dix, including classes on parenting, education, mental health, and the nonresidential drug abuse program. (*Id.*) The Court commends Ray on his accomplishments, which reflect well on his desire to become a productive and law-abiding citizen upon release.

As positive as those accomplishments are, there are other § 3553(a) factors that weigh against Ray. The nature and circumstances of Ray's conviction were serious. Ray received packages of auto switches from China. (PSR, DE 130 ¶ 9.) Auto switches are conversion devices which make semi-automatic guns into fully automatic weapons. (*Id.*) Prior to sentencing, Ray admitted that he "purchased over 100 auto switches over the past 6 months, many of which he

12

had sold for profit." (*Id.* ¶ 18.) In total he possessed between 100 and 199 firearms and auto switches. (*Id.* ¶ 21.) Selling numerous devices that convert semi-automatic guns into fully automatic weapons poses an obvious threat to the community. Furthermore, at sentencing, the Court considered Ray's minimal criminal history and the hardship posed to his family when it sentenced him to 41 months imprisonment, which was well below the guidelines sentencing range of 63 to 78 months imprisonment. Accordingly, based on the seriousness of this offense, and the fact that this Court already gave a below guideline's sentence, the Court does not find that the § 3553(a) factors support compassionate release or a reduction in sentence.

**D.      Conclusion**

For the reasons described above, the Court DENIES Ray's request for compassionate release. (DE 155.)

SO ORDERED.

ENTERED: May 12, 2023

                /s/ JON E. DEGUILIO
                Chief Judge
                United States District Court